UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PREMIER ORGANICS, INC.,<br><br>Defendant. | Case No.17-cv-00302-YGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO ALLOW TIME FOR DISCOVERY; CONTINUING BRIEFING AND HEARING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 51, 57 |

Now before the Court is defendant Premier Organics, Inc.'s ("Premier Organics") motion to allow time for discovery and continue all briefing and hearing on plaintiffs Travelers Indemnity Company of Connecticut's and Travelers Property Casualty Company of America's (collectively "Travelers") motion for summary judgment pursuant to Fed. R. Civ. Pro. 56(d). (Dkt. No 57.) Having carefully considered the pleadings and the papers submitted on this motion, and for the reasons set forth below, defendant's motion is **GRANTED**. All briefing and hearing dates regarding plaintiffs' motion for summary judgment are **CONTINUED** as set forth herein.

I.  **RELEVANT BACKGROUND**

This declaratory relief action arises from a punitive class action captioned *Alan Ducorsky v. Premier Organics*, Alameda County Superior Court, Case No. HG16801566 (the "*Ducorsky* Class Action") wherein the class action consumer plaintiffs sought damages from Premier arising from its sale of coconut oil. The class action is now-tentatively-resolved and Travelers has contributed to the settlement, with a reservation of rights. Travelers submits that no potential for insurance coverage ever existed under Premier's general liability policies. Specifically, Travelers argues that the insurance policy covers "bodily injury" caused by an "occurrence" and that the *Ducorsky* Class Action does not allege "bodily injury." Premier disagrees positing that because

the class action plaintiffs alleged that coconut oil caused health-related harms, it may fall within the purview of bodily injury.

Pursuant to the scheduling order entered in this case on July 10, 2017, the Court permitted Travelers to file an early summary judgment motion, but also allowed Premier to file a motion specifying whether and which discovery it needed, if at all, to oppose the motion. (Dkt. No. 41.) Travelers contends that no discovery is required to resolve its motion. (Dkt. No. 39.)

## II. LEGAL FRAMEWORK

### A. SUMMARY JUDGMENT

"[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" *Convertino v. DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). Fed. R. Civ. Pro. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: defer considering the motion . . . [or] allow time to obtain affidavits or declarations or take discovery." The "Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson*, 477 U.S. at 250 n. 5).

### B. CONTRACTUAL INTERPRETATION

The California Court of Appeals decision in *London Mkt. Insurers v. Super. Ct.*, 146 Cal.App.4th 648, 656 (2007) provides the relevant framework for evaluating the instant motion under California law:

> Although insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. *Foster–Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868, 77 Cal.Rptr.2d 107, 959 P.2d 265; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545.) Thus, the mutual intention of the contracting parties at the time the contract was formed governs. (Civ.Code, § 1636; *Foster–Gardner, Inc., supra,* 18 Cal.4th at p. 868, 77 Cal.Rptr.2d 107, 959 P.2d 265.) We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (Civ.Code, §§ 1639, 1647; *American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1245, 37 Cal.Rptr.3d 918.) We consider the contract as a whole and interpret the language in context, rather than

2

interpret a provision in isolation. (Civ.Code, § 1641; *American Alternative Ins. Corp., supra,* 135 Cal.App.4th at p. 1245, 37 Cal.Rptr.3d 918.) We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. (Civ.Code, § 1644; *American Alternative Ins. Corp., supra,* 135 Cal.App.4th at p. 1245, 37 Cal.Rptr.3d 918.)

A policy provision is ambiguous if it is capable of two or more reasonable constructions. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263.) In determining if a provision is ambiguous, we consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation. (*Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37, 39–40, 69 Cal.Rptr. 561, 442 P.2d 641.) Even apparently clear language may be found to be ambiguous when read in the context of the policy and the circumstances of the case. (*American Alternative Ins. Corp., supra,* 135 Cal.App.4th at p. 1246, 37 Cal.Rptr.3d 918, citing *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 652, 3 Cal.Rptr.3d 228, 73 P.3d 1205.)

If policy language is ambiguous, an interpretation in favor of coverage is reasonable only if it is consistent with the objectively reasonable expectations of the insured. (*Bank of the West, supra,* 2 Cal.4th at p. 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545.) Thus, the court must determine whether the coverage under the policy that would result from such a construction is consistent with the insured's objectively reasonable expectations. (*Nissel v. Certain Underwriters at Lloyd's of London* (1998) 62 Cal.App.4th 1103, 1111–1112, 73 Cal.Rptr.2d 174.)

In *London Market,* the Court considered the drafting history of the policy term in question.

Under California law, the "fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the W. v. Superior Court*, 2 Cal.4th 1254, 1264 (1992). "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters such as the surrounding circumstances *under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.*" *Morey v. Vannucci,* 64 Cal.App.4th 904, 912 (1998) (emphasis supplied). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Foster-Gardner, Inc. v. National Union Fire Ins. Co.,* 18 Cal.4th 857, 868 (1998) (citation omitted). However, in determining whether an ambiguity exists in the written provisions, "language in a contract must be construed in the context of the instrument as a whole

3

1 and in the circumstances of that case." *Id.* (Internal quotations and citation omitted). Extrinsic evidence may be admissible to "prove that a term is, in fact, ambiguous." *Lexington Ins. Co. v. Commonwealth Ins. Co.,* 1999 WL 33292943, *4 (N.D. Cal. 1999) (citing *Pac. Gas & Elec.,* 69 Cal.2d at 37).

### III. DISCUSSION

Plaintiffs' motion for summary judgment hinges in large part on the interpretation of two policy terms, namely "bodily injury" and "occurrence." (*See* Dkt. 51 at 1.) In essence, Travelers argues that the consumer class action is merely one of a labeling concern. While those allegations certainly exist, Travelers chooses to ignore the allegations regarding the harm to one's health. (*See* Dkt. No. 1, Complaint for Declaratory Judgment and Reimbursement ¶¶ 12-21, 36-46.) It is on these that defendant focuses.

As discussed above, California law requires the Court to interpret the terms in light of extrinsic evidence regarding the drafting, negotiation, and performance of the policy. *See Pac. Gas & Elec*, 69 Cal.2d at 37; *London Mkt. Insurers*, 146 Cal.4th at 661-62. Accordingly, defendant is entitled to discovery of extrinsic evidence relevant to whether these terms are "in fact, ambiguous." *Lexington,* 1999 WL 33292943, *4 (citing *Pac. Gas & Elec.,* 69 Cal.2d at 37). Such extrinsic evidence is not unlimited but rather focuses on "the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." *Morey,* 64 Cal.App.4th at 912; *see also Hernandez v. Badger Construction Equipment Co.* 28 Cal.App.4th 1791, 1814 (1994).

Here, Premier has provided a declaration, (Dkt. No. 58, Declaration of Thiele R. Dunaway ¶¶ 20-30 ("Dunaway Decl.")), which states that without discovery on certain categories of extrinsic evidence it "cannot present facts essential to justify its opposition" to plaintiffs' summary judgment motion. *See* Fed. R. Civ. Pro. 56(d). Specifically, defendant avers that such evidence "will assist in determining what facts relating to the *Ducorsky* claims were known by Travelers at the time it made its coverage decisions . . . how Travelers has interpreted the language in the policies, as well Travelers' intent with respect to the policies . . . . what risks Travelers expected to cover when it used the terms at issue. . . . [and] how Travelers has interpreted the pertinent

4

1 provisions of the policies as well as how it has evaluated similar claims in making a coverage

2 determination. . . ." (Dunaway Decl. ¶¶ 23, 25-26, 30.) According to defendants, relevant and

3 discovery evidence includes:

> all documents specifically referring to or related to Premier and the Ducorsky Action . . . . the identity of all claims adjusters who handled Premier's claim and the identity of all persons who evaluated, analyzed or otherwise participated in the coverage determination for Premier. . . . Travelers' claims manuals, underwriting files and manuals, and Travelers' internal communications related to the interpretation of the terms 'bodily injury,' 'occurrence,' 'accident,' 'expected or intended,' 'personal injury,' and 'advertising injury[]'. . . . documents related to information Travelers' insurance adjusters received while attending seminars, conferences, presentations and/or other meetings relating to interpretation of those policy terms. . . . all documents related to the action[s] styled *Hunter v. Nature's Way Products, LLC and Schwabe North America, Inc.* . . . . [and] *Sonner v. Schwabe North America, Inc. and Nature's Way Products, LLC* . . . . documents relating to any other Travelers' insureds where third party plaintiffs have asserted claims similar to those alleged against Premier in the Ducorsky Action . . . the identification of all actions filed against Travelers' insureds asserting claims against defendants regarding the sale of herbal supplements. . . . [and] expenses actually incurred by Travelers [in providing a defense to Premier]

(Dkt. No. 57 at 15-19.)

As an initial matter, the Court finds defendant's proposed discovery unduly burdensome and inconsistent with the revisions to the Code which now provides as to scope, discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Much of defendant's proposed discovery appears to be irrelevant as to whether the policy terms at issue are ambiguous and extends beyond the parties' "mutual intention." Further, none of the discovery which defendant proposes speaks to "the objectively reasonable expectations of the insured." *London Mkt. Insurers*, 146 Cal.App.4th at 656 (citing *Bank of the W.*, 2 Cal.4th at 1065.

Accordingly, at this juncture the Court finds that defendant is only entitled to discovery relevant to

whether there exists ambiguity with regard to the policy terms "bodily injury" and "occurrence." This includes, to the extent not already produced, (i) all documents specifically referring to Premier and the *Ducorsky* action which discuss the meaning of the terms "bodily injury" or "occurrence"; (ii) underwriting files and manuals specifically related to the terms "bodily injury" or "occurrence"; (iii) the identity of all claims adjusters who handled defendant's claim; (iv) the identity of all persons who evaluated, analyzed or otherwise participated in the coverage determination for defendant; (v) Travelers' internal communications related to the interpretation of the terms "bodily injury" and "occurrence"; and (vi) expenses actually incurred by Travelers in providing a defense to Premier, broken down for each party which shared defense costs.[1] Under Rule 56, the Court must "defer considering the [summary judgment] motion" and allow time for defendant to take limited discovery of these materials only. *See* Fed. R. Civ. Pro. 56; *Metabolife*, 264 F.3d at 846 (quoting *Anderson*, 477 U.S. at 250 n. 5).

**IV. CONCLUSION**

Having carefully considered the pleadings and the papers submitted on this motion, and for the reasons set forth above, defendant's motion to continue all briefing and hearing on plaintiffs' motion for summary judgment is **GRANTED**. Plaintiffs' pending motions are **DENIED WITHOUT PREJUDICE** to refiling once limited discovery is conducted.

The Court hereby **SETS** a compliance hearing for **October 20, 2017** on the Court's **9:01**

---

[1] By contrast, at this juncture defendant is not entitled to discovery regarding the identity of all persons who approved the language used in all Travelers commercial general liability policies; Travelers' claims manuals, underwriting files and manuals related to terms other than "bodily injury" or "occurrence"; all actions ever filed in any court against a Travelers insured asserting similar claims, including each attorney representing a plaintiff such actions; all persons who communicate with any governmental regulatory agency referring or related to Travelers commercial general liability policies; all persons who testified as expert witnesses on behalf of Travelers in the past ten years in any action with an insured related to any dispute regarding a duty to defend or indemnify under a Travelers commercial general liability policy; documents related to information Travelers' insurance adjusters received while attending seminars, conferences, presentations and/or other meetings relating to interpretation of those policy terms; documents related to the *Hunter* and *Sonner* actions; other Travelers' insureds where third party plaintiffs have asserted claims similar to those alleged against Premier in the *Ducorsky* action; Travelers' internal communications related to the interpretation of the terms other than "bodily injury" or "occurrence;" or actions filed against Travelers' insureds asserting claims regarding the sale of herbal supplements. The Court will consider whether defendant is entitled to these materials at a later date if Premier is able to establish that the terms at issue are in fact ambiguous, as provided herein.

6

**a.m. calendar**, in the Federal Courthouse, 1301 Clay Street, Oakland, California, Courtroom 1, for the filing of a JOINT discovery plan with potential dates for the refiling of plaintiffs' motion for summary judgment. Five (5) business days prior to the date of the compliance hearing, the parties shall file their JOINT discovery plan with potential dates for the refiling of plaintiffs' motion for summary judgment or a one-page JOINT STATEMENT setting forth an explanation regarding the failure to comply.

If compliance is complete, the parties need not appear and the compliance hearing will be taken off calendar.

This terminates Docket No. 51, 57.

**IT IS SO ORDERED.**

Dated: September 29, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**